**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Moriba W.,[1]

Petitioner,

v.

Joel Brott, et al.,

Respondents.

---

Case No. 26-cv-2806 (ECT/LIB)

**REPORT AND RECOMMENDATION**

Pursuant to a referral made in accordance with 28 U.S.C. § 636, this matter comes before the undersigned United States Magistrate Judge upon Petitioner Moriba W.'s Petition for a writ of habeas corpus. [Docket No. 1]. Finding no hearing necessary, the Court issues the present Report and Recommendation.[2]

For the reasons discussed herein, the undersigned recommends that Petitioner Moriba W.'s Petition for a writ of habeas corpus, [Docket No. 1], be **GRANTED in part** and **DENIED in part**.

## I. Background

Petitioner is a native and citizen of Guinea. (Petition [Docket No. 1] ¶ 15). Petitioner entered the United States without inspection on November 25, 2023, and since that time he has lived in Minnesota. (Id. ¶ 15). On November 29, 2023, Petitioner was served with a Notice to

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in immigration opinions such as the present Report and Recommendation. See, e.g., Yee S. v. Bondi, No. 25-cv-2782 (JMB/DLM), 2025 WL 2879479, at *1 n.1 (D. Minn. Oct. 9, 2025); Sarail A. v. Bondi, No. 25-cv-2144 (ECT/JFD), 2025 WL 2533673, at *1 n.1 (D. Minn. Sept. 3, 2025). Accordingly, where the Court refers to Petitioner by his name, only his first name and last initial are provided.

[2] Upon review of the present record, the Court finds that a hearing is unnecessary in this action because a hearing on the Petitioner's claim would not aid the Court in its consideration of the present Petition. See Wallace v. Lockhart, 701 F.2d 719, 730 (8th Cir. 1983).

Appear which initiated removal proceedings against him. (Id. ¶ 17; Notice to Appear [Docket No. 1-4]).

On May 6, 2026, law enforcement officers in Fridley, Minnesota arrested Petitioner. (Petition [Docket No. 1] ¶ 16). Petitioner was charged with failing to stop and failing to have proof of insurance. (Id.). On May 8, 2026, Petitioner was transferred into the custody of Immigration and Customs Enforcement ("ICE"). (Id.; Arrest Report [Docket No. 6-4]).[3] Petitioner was then transported to the Sherburne County Jail, in Elk River, Minnesota, where he remains detained. (Petition [Docket No. 1] ¶ 18).

Petitioner filed the present Petition on June 1, 2026. (Id.). The Petition is now fully briefed and ripe for adjudication.

## II. Discussion

"Habeas is at its core a remedy for unlawful executive detention." Munaf v. Geren, 553 U.S. 674, 693 (2008). To ensure that habeas remedy remains available, District Courts have been vested with the jurisdictional authority to grant writs of habeas corpus to any individual who demonstrates that they are being subjected to custodial confinement in violation of the Constitution, federal law, or a treaty of the United States. See, e.g., Rasul v. Bush, 542 U.S. 466, 473 (2004); Preiser v. Rodriguez, 411 U.S. 475, 485 (1973); 28 U.S.C. §§ 2241(a), 2241(c)(3). The District Court's habeas jurisdiction includes the authority to adjudicate habeas challenges to an individual's immigration-related detention. See, e.g., Zadvydas v. Davis, 533 U.S. 678, 687–88 (2001). "Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful." Abel Jimenez Jimenez v. Samuel J. Olson, No. 25-cv-189 (CJW/KEM),

[3] On May 7, 2026, immigrations officials issued an administrative warrant authorizing Petitioner's arrest, and on May 8, 2026, Petitioner was served a copy of that administrative warrant. (Warrant for Arrest [Docket No. 6-3]).

2025 WL 3633609, at *2 (N.D. Iowa Dec. 15, 2025) (citing Aditya W. H. v. Trump, 782 F. Supp. 3d 691, 702 (D. Minn. 2025); Walker v. Johnston, 312 U.S. 275, 286 (1941)).

In this habeas action, Petitioner argues that his continued detention without a bond hearing violates his due process rights as secured by the Due Process Clause of the Fifth Amendment to the United States Constitution. (See Petition [Docket No. 1] ¶¶ 1–2, 31–34, 39–45). As relief, Petitioner seeks his immediate release from detention[4] or in the alternative, an Order of this Court requiring Respondents to provide Petitioner with a bond hearing. (Id. at Prayer for Relief).

Respondents argue that Petitioner cannot even raise a due process argument because, according to Respondents, a noncitizen in Petitioner's position has only those due process rights that Congress has provided by statute. (Response [Docket No. 5] at 9–11). Respondents are incorrect. [5]

"Although Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens, noncitizens within the United States after entry, even illegal entry, are afforded additional rights and privileges than those on the threshold of initial entry." Id. (cleaned up) (citation omitted). Once an individual enters the United States, the individual's legal circumstances change because the Due Process Clause applies to all persons within the United States, including individuals who entered unlawfully. A. A. R. P. v. Trump, 605 U.S. 91, 94

[4] Under the current state of the law in the Eighth Circuit, 8 U.S.C. § 1225(b)(2) governs Petitioner's present detention. See, e.g., Felipe S.P. v. Blanche, No. 26-cv-2212 (NEB/DJF), 2026 WL 1911656, at *1–2 (D. Minn. July 2, 2026) (discussing Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026)).

[5] In support of this assertion, Respondents rely on Department of Homeland Security v. Thuraissigiam, 591 U.S. 103 (2020), but their reliance on Thuraissigiam is misplaced. Thuraissigiam involved a noncitizen who was apprehended near the United States border and whether that individual had a constitutional right to review of his expedited deportation order. Thuraissigiam, 591 U.S. 114, 117–18, 40. Thuraissigiam is simply inapplicable to the present case. See Felipe S.P. v. Blanche, No. 26-cv-2212 (NEB/DJF), 2026 WL 1911656, at *6 (D. Minn. July 2, 2026). Petitioner was not apprehended near the United States border or even shortly after crossing the United States border. Instead, he has resided in the United States for more than two years, has lived in Minnesota for that time, and was detained in Minnesota. Moreover, he is not seeking to challenge an expedited deportation order; indeed, Petitioner is not subject to any final removal order or expedited deportation order.

(2025) (quoting Trump v. J. G. G., 604 U.S. 670, 673 (2025)); Zadvydas, 533 U.S. at 690. Thus, immigration related detention violates an individual's due process rights unless there is a "special justification" which "outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" Zadvydas, 533 U.S. at 690 (quoting Kansa v. Hendricks, 521 U.S. 346, 356 (1997)).

Petitioner unquestionably possesses due process rights beyond those specifically provided by Congress in statute. The question remains, however, whether Petitioner's continued detention without a bond hearing for the duration of his removal proceedings violates Petitioner's due process rights.

To determine whether an individual's immigration related detention violates a detainee's due process rights, Courts apply the three factors which are referred to as Mathews factors. Mathews v. Eldridge, 424 U.S. 319, 335 (1976); see, e.g., Maldonado v. Olson, 795 F. Supp. 3d 1134, 1148 (D. Minn. 2025). The three factors are: (1) the private interest affected by the detention; (2) the risk of erroneous deprivation of such interest, and the probable value of additional or substitute procedural safeguards; and (3) the government's interest, including the burden of those additional or substitute safeguards. Mathews, 424 U.S. at 335.

In the present case, each of these factors favors Petitioner.

**A. Private Interest**

As Courts have repeatedly recognized, freedom from detention is "at the heart of the liberty that" the Due Process Clause protects. Zadvydas, 533 U.S. at 690; see Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004). Petitioner's interest here "is the most elemental of liberty interests—the interest in being free from physical detention by one's own government." Hamdi,

542 U.S. at 529 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992); Parham v. J. R., 442 U.S. 584, 600 (1979)).

Since entering the United States in 2023, Petitioner has established a life for himself as a resident of Minnesota. (See Petition [Docket No. 1] ¶ 15). When the ICE officers arrested Petitioner, they summarily deprived Petitioner of his right to be free from detention and exercise his personal freedoms. "The deprivation of [Petitioner's] private liberty interest cannot be overstated." See, e.g., Felipe S.P., 2026 WL 1911656, at *8.

The weight of Petitioner's private interest is further bolstered by his present detention being "largely identical to criminal detention." Felipe S.P., 2026 WL 1911656, at *8; Manuel G. v. Blanche, No. 26-cv-2385 (SRN/ECW), 2026 WL 1256358, at *4 (D. Minn. May 7, 2026) (citing Günaydin v. Trump, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (providing that under the first Mathews factor, Courts "consider the conditions under which detainees are currently held, including whether a detainee is held in conditions indistinguishable from criminal incarceration."). Petitioner is currently detained "in the Sherburne County Jail, at which pretrial criminal detainees and convicted criminals are also held." Milton A. v. Brott, No. 26-cv-2580 (SRN/EMB), 2026 WL 1493709, at *3 (D. Minn. May 28, 2026) (citing Günaydin, 784 F. Supp. 3d at 1187). Being detained at such a facility "strips him of his contact with friends and family, denies him the opportunity to work, and restricts his freedom of movement." Felipe S.P., 2026 WL 1911656, at *8.

Thus, given the significance of the private interest at stake, this first factor weighs heavily in favor of Petitioner. Id.

### B. Risk of Erroneous Deprivation

As to the second Mathews factor—the risk of erroneous deprivation—courts must "assess whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." Günaydin, 784 F. Supp. 3d at 1187.

In the present case, there is a substantial risk of erroneous "deprivation of liberty in the name of swift immigration enforcement," "particularly given the extent and velocity of Respondents' immigration-related actions in Minnesota over the past several months . . . ."Axel J.M.C. v. Stanski, No. 26-cv-2281 (JRT/EMB), 2026 WL 1171344, at *4 (D. Minn. Apr. 29, 2026); see, e.g., Manuel G., 2026 WL 1256358, at *4 (citing Axel J.M.C.); Espinoza-Avalos v. Blanche, No. 26-cv-191, 2026 WL 1396593, at *4 (D. Neb. May 19, 2026) (citing U.H.A. v. Bondi, 822 F. Supp. 3d 1007, 1034–35 (D. Minn. 2026)).

The risk of erroneous deprivation in the present case is heightened "by Respondents failure to make any argument that [Petitioner] would remain detained even if given a bond hearing." Felipe S.P., 2026 WL 1911656, at *9 (citing Restrepo v. Jamison, 823 F. Supp. 3d 529, 543 (E.D. Pa. 2026)). Petitioner's detention without an individualized determination of the underlying basis for detention, such as flight risk or dangerousness, "increases the likelihood of erroneous deprivation." Id. (citing Rodriguez v. Frink, 823 F. Supp. 3d 678, 689–90 (S.D. Tex. 2026); Bonilla Chicas v. Warden, 821 F. Supp. 3d 782, 798 (S.D. Tex. 2026); Chavero v. Bondi, 818 F. Supp. 3d 836, 844–45 (W.D. Tex. 2025)).

Moreover, even immigration related detention must bear a "reasonable relation to the purpose for which" the individual is being detained. Zadvydas, 533 U.S. at 690; Seling v. Young, 531 U.S. 250, 265 (2001); Foucha, 504 U.S. at 79. But here that relation is lacking. Although the

risk of flight and security concerns can justify detention of individuals subject to the removal process,[6] the issue here is that Respondents have failed to provide Petitioner with any avenue through which to challenge the purported purpose of his detention.

When considering the second Mathews factor, the Court must also "consider the degree to which additional or substitute procedural safeguards could ameliorate the risks of erroneous deprivation." Maldonado v. Olson, 795 F. Supp. 3d 1134, 1153 (D. Minn. 2025) (citing Mathews, 424 U.S. at 335). In the present case, alternative means exist which could ameliorate the risk of erroneous deprivation of liberty: individualized bond hearings. See, e.g., Espinoza-Avalos, 2026 WL 1396593, at *4; Manuel G., 2026 WL 1256358, at *5. And as other Courts have recognized, the value of such an individualized bond hearing is "substantial." Felipe S.P., 2026 WL 1911656, at *9.

Thus, the second Mathews factor also weighs heavily in favor of Petitioner.

**C. Government's Interest and Burden**

It is well settled that the government has a strong interest in enforcing immigration laws. Dep't of State v. Munoz, 602 U.S. 899, 911–12 (2024). "Over no conceivable subject is the legislative power of Congress more complete" than the subject of immigration. Felipe S.P., 2026 WL 1911656, at *9 (citing Reno v. Flores, 507 U.S. 292, 305 (1993)). But the question here is not the government's interest in enforcing immigration law at large or the burden such enforcement would have on the government. The question now, instead, is the government's interest in detaining individuals without a bond hearing and the burden that providing a bond hearing would place on the government.

[6] Respondents assert that the consideration of factors like risk of flight and danger to the community are irrelevant here because Congress enacted § 1225(b)(2) without reference to any such factors. (See Response [Docket No. 5] at 6–7). Respondents are incorrect. Despite "Congress's plenary power over immigration matters," it is "the Constitution, not legislation," which "sets the floor for due process." Felipe S.P., 2026 WL 1911656, at *9.

In the present case, Respondents fail to offer any interest the government has in detaining individuals like Petitioner without a bond hearing.[7] Similarly, Respondents have wholly failed to demonstrate that providing bond hearings to detainees in Petitioner's circumstance would be unduly burdensome. Indeed, "until recently, it was standard procedure for the government to provide bond hearings for detainees in Petitioner's position." Espinoza-Avalos, 2026 WL 1396593, at *4 (citing Barbosa da Cunha v. Freden, 175 F.4th 61, 69 (2d Cir. 2026)); see Felipe S.P., 2026 WL 1911656, at *9 (citing Jesus Alejandro G. A. v. Blanche, No. 26-cv-1932 (LMP/ECW), 2026 WL 1383138, at *12 (D. Minn. May 18, 2026)).

While Respondents may have a substantial interest in enforcing immigration laws at large, Respondents have failed to demonstrate any interest in summarily detaining individuals like Petitioner without any bond hearing whatsoever. And providing Petitioner, and those immigration detainees in the same circumstances as Petitioner, with an individualized bond hearing "would impose minimal, if any, financial or administrative burden on Respondents." Abdirashid H. M. v. Noem, No. 25-cv-4779 (JRT/EMB), 2026 WL 127698, at *5 (D. Minn. Jan. 9, 2026).

**D. Weighing the Factors**

For all reasons discussed above, Petitioner's private liberty interest is significant, and the risk of an erroneous deprivation of that interest is very high. Conversely, the government has little, if any, interest in summarily detaining individuals without a bond hearing, or some other means of ensuring that said detention is reasonably related to the purpose of detention. And

[7] Respondents' memorandum could be read as implicitly arguing that they have an interest in detention without a bond hearing because Congress enacted § 1225(b) to require mandatory detention without reference to a bond hearing in the statute and because, according to Respondents, immigration detainees are entitled to only those rights provided for by Congress. However, as already discussed, that argument lacks merit.

providing a bond hearing to individuals in Petitioner's circumstance creates, at most, a very minimal burden for the Respondents.

Weighing these factors together, the Mathews factors weigh heavily in favor of Petitioner and in favor of finding that due process requires Petitioner receive a bond hearing. In such circumstances the appropriate remedy is to require an individualized bond hearing. See, e.g., Manuel G., 2026 WL 1256358, at *5 (collecting cases); Jesus Alejandro G. A., 2026 WL 1383138, at *12; Abdirashid H. M., 2026 WL 127698, at *5.[8]

Therefore, to the extent the Petition seeks an Order of this Court compelling Respondents to provide Petitioner with an individualized bond hearing, the undersigned recommends that the Petition, [Docket No. 1], be **GRANTED in part**.[9] To the extent the Petition seeks an Order of this Court compelling Respondents to immediately release Petitioner, the undersigned recommends that the Petition, [Docket No. 1], be **DENIED in part**.

## III. Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Petitioner Moriba W.'s Petition for a Writ of Habeas Corpus, [Docket No. 1], be **GRANTED in part** and **DENIED in part**, as set forth herein;

---

[8] Respondents assert that "[e]ven if this Court were to order a bond hearing to occur before an immigration judge, the immigration judge would not be able to hear the merits under binding precedent because § 1225 detainees," like Petitioner, "are bond-ineligible. They are bond-ineligible because any other outcome would suggest their detention is discretionary, not mandatory, contrary to the Supreme Court's understanding of § 1225 . . . ." (Response [Docket No. 6] at 4) (citation omitted). In practice, this has not been the case. In countless cases across the country and in this District, Courts have ordered that petitioners detained pursuant to § 1225 be provided bond hearings, and not only have those petitioners received bond hearing but many of them have been released on bond. See, e.g., Felipe S.P., 2026 WL 1911656, at *9 (ordering respondents to provide petitioner—in circumstances materially similar to Petitioner here—with a bond hearing); Felipe S.P. v. Blanche, No. 26-cv-2212 (NEB/LIB), Letter [Docket No. 20] (D. Minn. July 7, 2026) (providing a letter from respondents' counsel indicating that a bond hearing was held, that the immigration judge ordered the petitioner released under a bond, and that the Department of Homeland Security did not intend to appeal the immigration judge's bond order).

[9] Because the Court finds that Petitioner is entitled to habeas relief on this basis, the Court does not reach Petitioner's alternative arguments. Felipe S.P., 2026 WL 1911656, at *9 n.7; Faysal N. v. Noem, 825 F. Supp. 3d 844, 849 n.3 (D. Minn. 2026).

**2.** Respondents be ordered to provide Petitioner with a bond hearing no later than five (5) business days from any Order adopting this Report and Recommendation;

**3.** Any decision resulting in continued detention of Petitioner following the bond hearing be required to set forth in writing the reasons for his continued detention;

**4.** If the bond hearing results in Petitioner's release, Respondents be required to release Petitioner in Minnesota at a safe time and place communicated in advance to his counsel with all his personal effects, as well as, all identification documents and immigration documentation seized during his arrest; and

**5.** The remainder of Petitioner Moriba W.'s Petition for a writ of habeas corpus, [Docket No. 1], be **DENIED without prejudice**.

Dated: July 30, 2026

s/Leo I. Brisbois
Hon. Leo I. Brisbois
U.S. MAGISTRATE JUDGE

## N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).